IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| THE CITY OF GALESBURG,<br>An Illinois municipal corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No.   15-cv-4077 |
| AECOM USA, Inc., successor in interest<br>To CONSOER TOWNSEND<br>ENVIRODYNE ENGINEERS, INC., a<br>New York corporation, | ) ) ) ) ) | |
| Defendant. | ) ) | |

## AECOM USA, INC.'S NOTICE OF REMOVAL

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

PLEASE TAKE NOTICE that Defendant, AECOM USA, Inc. ("AECOM") hereby removes to this Court the state court action described below:

**I.     INTRODUCTION**

1.     On June 5, 2015 an action was commenced in the Circuit Court of the Ninth Judicial Circuit, Knox County, Illinois, entitled *The City Of Galesburg v. AECOM USA, Inc., successor in interest to Consoer Townsend Envirodyne Engineers, Inc.,* as Case No. 15 L 21 (the "State Action"). A copy of the state court Complaint is attached as Exhibit A.

2.     The State Action consists of a one count Complaint asserting a breach of contract against AECOM.

3.     At the request of Plaintiff's counsel, AECOM accepted service by mail after the

complaint was filed. *See* Declaration of Aren Fairchild, at paragraph 6, attached as Exhibit B. Because this Notice of Removal is filed within thirty days of filing and AECOM's receipt of the Complaint, it is timely. *See* 28 U.S.C. § 1446(b).

4.    Pursuant to 28 U.S.C. § 1446(a), the United States District Court for the Central District of Illinois, Rock Island Division, is the district and division in which the State Action is pending. *See* 28 U.S.C. § 93(b). Accordingly, venue is proper in this Court.

5.    Defendant will file today a copy of this Notice with the Clerk of the Circuit Court of the Ninth Judicial Circuit, Knox County, Illinois, and give written notice of the same to Plaintiff's counsel, pursuant to 28 U.S.C. § 1446(d).

## II.    REMOVAL IS PROPER BASED ON DIVERSITY JURISDICTION

6.    The basis for removal is diversity jurisdiction pursuant to 28 U.S.C. § 1332 because: (a) there is diversity of citizenship between the Plaintiff and the Defendant, and (b) the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, as shown by the allegations of the Complaint and the Declaration of Aren Fairchild.

### A.    DIVERSITY OF CITIZENSHIP EXISTS

7.    For purposes of diversity of jurisdiction, a corporation is deemed to be a citizen of the state where it is incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

8.    Plaintiff, The City Of Galesburg ("Galesburg"), is an Illinois municipal corporation with its principal place of business in Galesburg, Illinois. (Exhibit A, ¶ 1.)

9.    Plaintiff Galesburg has alleged in the State Action complaint that AECOM is a New York corporation authorized to do business in Illinois. (Exhibit A, ¶ 2.) For purposes of diversity jurisdiction, AECOM is New York corporation with its principal place of business at 605 Third

Ave., New York, NY. (Exhibit B, ¶4.)

10.     Because Galesburg is a citizen of Illinois and AECOM is a citizen of New York for diversity purposes, the first prong of the diversity test is satisfied.

**B. THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.00**

11.     Section 1332 requires the amount in controversy to exceed "the sum or value of $75,000, exclusive of interest and costs ...." 28 U.S.C. § 1332(a). Here, the State Action seeks compensatory damages "in an amount in excess of $50,000 . . ." (Exhibit A, p. 7), but during pre-filing discussions between Galesburg and AECOM, Galesburg has advised AECOM that it has incurred and is pursuing damages in excess of $250,000. (Exhibit B, ¶ 7) Accordingly, the amount in controversy exceeds $75,000.00 and the second prong of the diversity test is satisfied. *See* 28 U.S.C. § 1446(c)(2)(A)(ii) and 1446(c)(2)(B). This Court has jurisdiction over this case.

12.     Because there is complete diversity of citizenship between Plaintiff and Defendant, and because Plaintiff is seeking damages in excess of the $75,000.00 jurisdictional threshold, AECOM may remove this action pursuant to 28 U.S.C. §§ 1332 and 1441.

13.     AECOM reserves the right to supplement this Notice of Removal and/or to present additional arguments in support of its entitlement to removal.

14.     No admission of fact, law, or liability is intended by this Notice of Removal, and all defenses, affirmative defenses, and motions are hereby reserved.

**WHEREFORE**, Defendant, AECOM USA, Inc., respectfully requests that the above-referenced State Action, now pending in the Circuit Court of the Ninth Judicial Circuit, Knox County, Illinois, be removed to the United States District Court for the Central District of Illinois, Rock Island Division.

Respectfully submitted on this 6th day of July, 2015,

_____/s/ Daniel C. Curth_____

Daniel C. Curth
(Illinois: 6229090)
Anthony J. Carballo
(Illinois: 6193218)
**FREEBORN & PETERS LLP**
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
312-360-6000

*Attorneys for AECOM USA, Inc.*

# EXHIBIT A

IN THE CIRCUIT COURT
OF THE NINTH JUDICIAL CIRCUIT
KNOX COUNTY, ILLINOIS

FILED
KNOX CO., IL.
JUN 0 5 2015
KELLY CHEESMAN
Clerk of the Circuit Court
Deputy

| | |
|---|---|
| THE CITY OF GALESBURG, an Illinois municipal corporation,     Plaintiff | ) ) ) ) |
| v. | ) )    Case No. 2015 L 2 1 |
| AECOM USA, Inc.,  successor in interest to CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC., a New York corporation,     Defendant | ) ) ) ) ) |

## COMPLAINT

NOW COMES the Plaintiff, the CITY OF GALESBURG, Illinois, by and through its attorneys, John M. Hanlon, Corporation Counsel, of Hanlon Law Office, and Bruce S. Bonczyk, of Bruce S. Bonczyk Law Office, and complains of the Defendant, AECOM USA, Inc. (successor in interest to Consoer Townsend Envirodyne Engineers, Inc.), as follows:

### Breach of Contract

1. The CITY OF GALESBURG ("CITY"), Illinois, is a duly organized and authorized body politic and corporate of the State of Illinois pursuant to the Illinois Municipal Code, 65 ILCS 5 *et. seq.*

2. Upon information and belief, AECOM USA, Inc. ("AECOM"), is a New York corporation authorized to do business in Illinois, in good standing, and is the successor in interest to Consoer Townsend Envirodyne Engineers, Inc.  AECOM is in the business of providing engineering services in the State of Illinois and elsewhere.

3. On or about April 12, 2007, the CITY entered into a Professional Service Agreement, Water Treatment Plant Relocation ("Contract"), with Consoer Townsend Envirodyne Engineers, Inc.  A true and correct copy of the Contract is attached as Exhibit A.

4.  On or about April 21, 2008, the CITY entered into Amendment No. 1 to Engineering Agreement ("Amendment No. 1"), said Agreement being the Contract with Consoer Townsend Envirodyne Engineers, Inc. dated April 12, 2007. A true and correct copy of Amendment No. 1 is attached as Exhibit B.

5.  On or about December 7, 2009, the CITY entered into Amendment No. 2 to Engineering Agreement ("Amendment No. 2") with AECOM Technical Services, Inc., said Agreement being the Contract with Consoer Townsend Envirodyne Engineers, Inc., dated April 12, 2007. A true and correct copy of Amendment No. 2 is attached as Exhibit C.

6.  Upon information and belief, through a series of acquisitions, subsidiary operations and re-structuring, Consoer Townsend Envirodyne Engineers, Inc. and AECOM Technical Services, Inc. now operate as AECOM USA, Inc. For purposes of this complaint, any references in the Contract, and Amendments Nos. 1 and 2, to Consoer Townsend Envirodyne Engineers, Inc. and AECOM Technical Services, Inc., shall be AECOM, representing AECOM USA, Inc., the successor in interest.

7.  Pursuant to the Contract, AECOM agreed to perform engineering services with respect to the design, contract drawings, specifications, other contract documents and construction related services for the construction of the Water Treatment Plant ("Project") located at Oquawka, Illinois, the subject of this complaint.

8.  Pursuant to the following provisions of the Contract, AECOM had certain duties and obligations to the CITY for the design, contract drawings, specifications, and other contract documents, including, but not limited to the following requirements of the Contract, set forth in relevant part:

    a.  Section II.(c) - "Perform the services in accordance with generally accepted professional engineering standards in existence at the time of performance of the Services."

    b.  Division "A"  2. - "The documents will be prepared in compliance with applicable codes, guidelines and standards."

    c.  Attachment "A"  4. Project Understanding and Approach - Quality

Assurance/Quality Control - "It has always been the responsibility of senior officers in the firm to see that projects meet the highest standards of engineering quality and attain client goals."

9.  Pursuant to the following provisions of Amendment No. 1 to the Contract, AECOM had certain duties and obligations to the CITY for construction related activities, including, but not limited to the following requirements of Amendment No. 1:

    a.  Exhibit A - 1. - "CTE (Consoer Townsend Envirodyne Engineers) will consult and advise on the interpretation of contract documents. Furnish engineering advice and consulting services during the construction period, by correspondence and telephone with the City of Galesburg or their representative."

    b.  Exhibit A - 2. - CTE will review and approve shop drawings, product data and samples, but only for the limited purpose of checking for conformance with the information given and the design concept expressed in the drawings and technical specifications."

    c.  Exhibit A- 4. - "CTE will make periodic field site inspections of the construction site at significant progress points during the project. Total number of site visits will be approximately twelve (12).

10. The CITY has performed all conditions it was required to perform pursuant to the terms of the Contract, and Amendment Nos. 1 and 2. The CITY has paid AECOM for its services in the full amounts required by the contract and amendments:

    a.  Contract - $685,000.00

    b.  Amendment No. 1 - $281,235.00

    c.  Amendment No. 2 - $12,601.20

11. After the Project was deemed operational by AECOM, the CITY began operating the Water Treatment Plant, and certain defects and deficiencies were discovered in the operation of the Water Treatment Plant, including, but not limited to:

    a.  High Service Pumping to the Distribution System - As the water level draws down inside the storage tanks, and the water level inside the tanks equals the elevation of the centerline of the pumps, the pumps lose prime and cavitate, affecting the ability to pump water to the transmission lines.

b.    High Service Pumping to the Distribution System - Operation requires the throttling of butterfly discharge valves to control the high service pumps, detrimentally affecting pump efficiency and operational costs. Pump flows are above the needs of the overall system and are difficult to regulate using the variable frequency drives.  The location of such valves also requires that all high service pumps must be off line for valve replacement.

c.    Corrosion of Ductwork and Electrical Components and Stainless Steel Components in Filter Room and Mechanical Room - The ductwork and heating, ventilating and air conditioning systems and components are degrading and corroding due to excessive chlorine levels in the Filter Room and Mechanical Room.

d.    Insufficient Heating - Chemical Storage Rooms - The facility has experienced difficulty fully draining the liquid chlorine cylinders as a result of insufficient heating systems in the rooms, which allow for the rooms to be unable to obtain desired operational temperatures.

e.    Raw water flows to contact tanks will not remain equal, forcing the City to adjust valves in order reach equal flows.

f.    Flows through chlorination lines will not remain equal to contact tanks after they are split.

g.    Pit floor in High Service Pump Room will not drain to room sump pit.

h.    Dry well in Filter Room did not include a sump pit/pump.

i.    Surge Line in High Service Pump Room is located five feet off floor rather than at or near floor level, and is insufficiently braced resulting in excess vibrations.

j.    Monorail hoist in High Service Pump Room is not located properly, so that in order to pull  certain pumps for repair and maintenance, other pumps must be removed prior due to lack of clearance.

k.    Chlorine Storage Room vents to rooftop allowing chlorine gases to flow down

to occupied spaces at ground level.

l.   Blower motor for first floor air handling unit cannot be serviced in its current location due to obstructions.

m.   All offices, conference room, and laboratory in plant facility do not heat or cool properly.

n.   Sample line drains are wasted to septic system, thereby overloading the septic tank.

o.   Variable Frequency Drive at control room for Pump HC-7 is not controlled by SCADA system.

p.   Chemical feed meters and intrusion alarms were required to be installed that were not originally specified to insure proper system operation.

12.   Pursuant to the terms of the Contract, and Amendments Nos. 1 and 2, AECOM agreed to perform engineering services with respect to the design, contract drawings, specifications, other contract documents  and construction related services for the construction of the Water Treatment Plant, including, but not limited to those enumerated in Paragraphs 8 and 9 of this Complaint, which encompass certain standards of care in the design of the Project.

13.   Despite its duty to comply with the obligations set forth in the Contract and Amendments Nos. 1 and 2, and as enumerated in Paragraphs 8 and 9 of the Complaint, AECOM breached its obligation to the CITY in failing to perform as follows:

a.   Failed to perform services in accordance with generally accepted professional engineering standards in existence at the time of performance of the services for the Project, in that the Water Treatment Plant does not operate without the aforementioned defects and deficiencies.

b.   Failed to produce drawings and specification documents in accord with applicable codes, guidelines and standards, in that the Water Treatment Plant does not operate without the aforementioned defects and deficiencies.

c.  Failed to perform services in accordance with the highest standards of engineering quality, in that the Water Treatment Plant does not operate without the aforementioned defects and deficiencies.

d.  Failed to properly inform the City of the consequences of proposed changes in the design and operation of the Project proposed or recommended by AECOM during the engineering and construction of the Project.

e.  Failed to furnish the required engineering advice and consulting services during the construction period which would have prevented the aforementioned defects and deficiencies in the operation of the Water Treatment Plant.

f.  Failed to properly review and approve shop drawings, product data and samples, for conformity with the information given and the design concept expressed in the drawings and technical specifications, which would have prevented the aforementioned defects and deficiencies in the operation of the Water Treatment Plant.

g.  Failed to identify defects and deficiencies during periodic field site inspections of the construction site at significant progress points during the project, which would have prevented the aforementioned defects and deficiencies in the operation of the Water Treatment Plant.

h.  Failed to perform its design and specifications and drawings in accordance with the generally accepted profession engineering standards, thereby causing the CITY to incur increased costs of maintenance, increased energy costs of electricity, and premature wear of components of the Water Treatment Plant.

14.  Despite demands by the CITY that AECOM correct the deficiencies resulting from the errors and omissions of AECOM, AECOM has failed to take such action.

15.  As a direct and proximate cause of AECOM's breach of contract to provide such services, and to perform the duties and obligations set forth in the Contract and Amendments Nos. 1 and 2, the CITY has incurred and will incur significant expenses

Case No. 2015 L _____          Page 6 of 38

in excess of $50,000.00 for the repair and replacement of the improperly designed and defective Water Treatment Plant systems, including excess energy and maintenance costs.

WHEREFORE, Plaintiff, the CITY of GALESBURG, respectfully requests the Court to enter judgment in its favor in an amount in excess of $50,000.00, such amount to be proven with greater specificity at trial, together with costs of the suit, reasonable attorneys' fees, and such other relief the Court deems right and just.

Respectfully submitted,
THE CITY OF GALESBURG, Plaintiff

_____
By One of Its Attorneys

John M. Hanlon
legal@ci.galesburg.il.us
(IL Reg. 1118358)
HANLON LAW OFFICE
250 E. Main Street - Suite 318
Galesburg, IL 61401
309-342-4139
309-342-6109 fax

Bruce S. Bonczyk
bbonczyk@601w.com
(IL Reg. 6190593)
BRUCE S. BONCZYK LAW OFFICE
601 West Monroe Street
Springfield, IL 62704
217-525-0700
217-525-0780 fax

*Galesburg*
*60023958*

## PROFESSIONAL SERVICE AGREEMENT
## WATER TREATMENT PLANT RELOCATION

This Agreement is made and entered into this *12th* day of *April*, 2007 by and between Consoer Townsend Envirodyne Engineers, Inc., a Delaware corporation, hereinafter referred to as ENGINEER" and The City of Galesburg, Illinois, hereinafter referred to as "CLIENT".

IN CONSIDERATION of the covenants hereinafter set forth, the parties hereto mutually agree as follows:

### I.      SCOPE OF SERVICES

ENGINEER shall perform professional engineering Services (the "Services") in connection with CLIENT's facilities in accordance with the Scope of Services set forth in Exhibit A attached hereto.

### II.      ENGINEER's RESPONSIBILITIES

ENGINEER shall, subject to the terms and provisions of this Agreement:

(a)      Appoint one or more individuals who shall be authorized to act on behalf of ENGINEER and with whom CLIENT may consult at all reasonable times, and whose instructions, requests, and decisions will be binding upon ENGINEER as to all matters pertaining to this Agreement and the performance of the parties hereunder.

(b)      Use all reasonable efforts to complete the Services within the time period mutually agreed upon, except for reasons beyond its control.

(c)      Perform the Services in accordance with generally accepted professional engineering standards in existence at the time of performance of the Services. If during the two year period  following the completion of Services, it is shown that there is an error in the Services solely as a result of ENGINEER's failure to meet these standards, ENGINEER shall re-perform such substandard Services as may be necessary to remedy such error at no cost to CLIENT. Since ENGINEER has no control over local conditions, the cost of labor and materials, or over competitive bidding and market conditions, ENGINEER does not guarantee the accuracy of any construction cost estimates as compared to contractor's bids or the actual cost to the CLIENT.  ENGINEER makes no other warranties either express or implied and the parties rights, liabilities, responsibilities and remedies with respect to the quality of Services, including claims alleging negligence, breach of warranty and breach of contract, shall be exclusively those set forth herein.

(d)      ENGINEER shall, if requested in writing by CLIENT, for the protection of CLIENT, require from all vendors and subcontractors from which ENGINEER procures equipment, materials or services for the project, guarantees with respect to such equipment, materials and services. All such guarantees shall be made available to CLIENT to the full extent of the terms thereof.  ENGINEER's liability with respect to such equipment, and materials



EXHIBIT
A

obtained from vendors or services from subcontractors, shall be limited to procuring guarantees from such vendors or subcontractors and rendering all reasonable assistance to CLIENT for the purpose of enforcing the same.

(e)    The ENGINEER will be providing estimates of costs to the CLIENT covering an extended period of time. The ENGINEER does not have control over any such costs, including, but not limited to, costs of labor, material, equipment or services furnished by others or over competitive bidding, marketing or negotiating conditions, or construction contractors' methods of determining their prices. Accordingly, it is acknowledged and understood that any estimates, projections or opinions of probable project costs provided herein by the ENGINEER are estimates only, made on the basis of ENGINEER's experience and represent the ENGINEER's reasonable judgment as a qualified professional. ENGINEER does not guaranty that proposals, bids or actual project costs will not vary from the opinions of probable costs prepared by the ENGINEER, and the CLIENT waives any and all claims that it may have against the ENGINEER as a result of any such variance.

## III.    CLIENT'S RESPONSIBILITIES

CLIENT shall at such times as may be required for the successful and expeditious completion of the Services;

(a)    Provide all criteria and information as to CLIENT'S requirements; obtain all necessary approvals and permits required from all governmental authorities having jurisdiction over the project; and designate a person with authority to act on CLIENT'S behalf on all matters concerning the Services.

(b)    Furnish to ENGINEER all existing studies, reports and other available data pertinent to the Services, and obtain additional reports, data and services as may be required for the project. ENGINEER shall be entitled to rely upon all such information, data and the results of such other services in performing its Services hereunder.

## IV.    INDEMNIFICATION

ENGINEER agrees to indemnify and hold harmless CLIENT from and against any and all suits, actions, damages, loss, liability or costs (including, without limitation, reasonable attorneys' fees directly related thereto) for bodily injury or death of any person or damage to third party property if and to the extent arising from the negligent errors or omissions or willful misconduct of ENGINEER during the performance of the Services hereunder.

## V.    INSURANCE

Commencing with the performance of the Services, and continuing until the earlier of acceptance of the Services or termination of this Agreement, ENGINEER shall maintain standard insurance policies as follows:

    (a)     Workers' Compensation and/or all other Social Insurance in accordance with the statutory requirements of the state having jurisdiction over ENGINEER's employees who are engaged in the Services, with Employer's Liability not less than One Hundred Thousand Dollars ($100,000) each accident;

    (b)     Commercial General Bodily Injury and Property Damage Liability and Automobile liability insurance including (owned, non-owned, or hired), each in a combined single limit of One Million Dollars ($1,000,000) each occurrence for bodily injury and property damage liability. This policy includes Contractual Liability coverage. ENGINEER agrees to name CLIENT as Additional Insured on this policy, but only to the extent of ENGINEER's negligence under this Agreement and only to the extent of the insurance limits specified herein.

    (c)     Professional Liability Insurance with limits of $1,000,000 per claim and in the aggregate covering ENGINEER against all sums which ENGINEER may become legally obligated to pay on account of any professional liability arising out of the performance of this Agreement.

The ENGINEER agrees to provide CLIENT with certificates of insurance evidencing the above described coverage prior to the start of Services hereunder and annually thereafter if required. Such certificates of insurance shall provide that the applicable insurance policies have been endorsed to provide a minimum of thirty (30) days advance notice to the CLIENT in the event of cancellation, material change, or non-renewal.

## VI.   COMPENSATION AND TERMS OF PAYMENTS

The fees to be charged for the Services performed hereunder are set forth in Exhibit B-Compensation.

On or about the first day of each calendar month, the ENGINEER shall submit to CLIENT an invoice supported by one copy each of all payrolls, vendors' invoices, expense reports, and any other documentation necessary to substantiate the invoiced amount. CLIENT agrees to pay ENGINEER the full amount of such invoice within thirty (30) days after receipt thereof. In the event CLIENT disputes any invoice item, CLIENT shall give ENGINEER written notice of such disputed item within ten (10) days after receipt of invoice and shall pay to ENGINEER the undisputed portion of the invoice according to the provisions hereof. Client agrees to abide by any applicable statutory prompt pay provisions currently in effect.

## VII.   TERMINATION

CLIENT may, with or without cause, terminate the Services at any time upon fourteen (14) days written notice to ENGINEER. The obligation to provide further Services under this Agreement may be terminated by either party upon fourteen (14) days' written notice in the event of substantial failure by the other party to perform in accordance with the terms hereof through no fault of the terminating party, providing such defaulting party has not cured such failure, or, in the event of a non-monetary default, commenced reasonable actions to cure such failure. In either case,

ENGINEER will be paid for all expenses incurred and Services rendered to the date of the termination in accordance with compensation terms of Exhibit B.

VIII.  **OWNERSHIP OF DOCUMENTS**

1.  Sealed original drawings, specifications, final project specific calculations and other instruments of service which CTE prepares and delivers to Client pursuant to this Agreement shall become the property of Client when CTE has been compensated for Services rendered. Client shall have the right to use such instruments of service solely for the purpose of the construction, operation and maintenance of the Facilities. Any other use or reuse of original or altered files shall be at Client's sole risk without liability or legal exposure to CTE and Client agrees to release, defend and hold CTE harmless from and against all claims or suits asserted against CTE in the event such documents are used for a purpose different than originally prepared even though such claims or suits may be based on allegations of negligence by CTE. Nothing contained in this paragraph shall be construed as limiting or depriving CTE of its rights to use its basic knowledge and skills to design or carry out other projects or work for itself or others, whether or not such other projects or work are similar to the work to be performed pursuant to this Agreement.

2.  Any files delivered in electronic medium may not work on systems and software different than those with which they were originally produced and Consultant makes no warranty as to the compatibility of these files with any other system or software. Because of the potential degradation of electronic medium over time, in the event of a conflict between the sealed original drawings and the electronic files, the sealed drawings will govern.

IX.  **MEANS AND METHODS**

(a)  ENGINEER shall not have control or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety measures and programs including enforcement of Federal and State safety requirements, in connection with construction work performed by CLIENT's construction contractors. Nor shall ENGINEER be responsible for the supervision of CLIENT's construction contractors, subcontractors or of any of their employees, agents and representatives of such contractors; or for inspecting machinery, construction equipment and tools used and employed by contractors and subcontractors on Company's construction projects and shall not have the right to stop or reject work without the thorough evaluation and approval of the CLIENT. In no event shall ENGINEER be liable for the acts or omissions of CLIENT's construction contractors, subcontractors or any persons or entities performing any of the construction work, or for the failure of any of them to carry out construction work under contracts with CLIENT.

(b)  In order that ENGINEER may be fully protected against such third party claims, CLIENT agrees to obtain and maintain for the benefit of ENGINEER the same indemnities and insurance benefits obtained for the protection of the CLIENT from any contractor or subcontractor working on the project and shall obtain from that contractor/subcontractor insurance certificates evidencing ENGINEER as an additional named insured.

## X.  INDEPENDENT CONTRACTOR

ENGINEER shall be an independent contractor with respect to the Services to be performed hereunder. Neither ENGINEER nor its subcontractors, nor the employees of either, shall be deemed to be the servants, employees, or agents of CLIENT.

## XI.  PRE-EXISTING CONDITIONS

Anything herein to the contrary notwithstanding, title to, ownership of, legal responsibility and liability for any and all pre-existing contamination shall at all times remain with Client. "Pre-existing contamination" is any hazardous or toxic substance present at the site or sites concerned which was not brought onto such site or sites by CTE. Client agrees to release, defend, indemnify and hold CTE harmless from and against any and all liability which may in any manner arise in any way directly or indirectly caused by such pre-existing contamination except if such liability arises from CTE's sole negligence or willful misconduct.

Client shall, at Client's sole expense and risk, arrange for handling, storage, transportation, treatment and delivery for disposal of pre-existing contamination.  Client shall be solely responsible for obtaining a disposal site for such material. Client shall look to the disposal facility and/or transporter for any responsibility or liability arising from improper disposal or transportation of such waste.  CTE shall not have or exert any control over Client in Client's obligations or responsibilities as a generator in the storage, transportation, treatment or disposal of any pre-existing contamination.  Client shall complete and execute any governmentally required forms relating to regulated activities including, but not limited to generation, storage, handling, treatment, transportation, or disposal of pre-existing contamination.  In the event that CTE executes or completes any governmentally required forms relating to regulated activities including but not limited to storage, generation, treatment, transportation, handling or disposal of hazardous or toxic materials, CTE shall be and be deemed to have acted as Client's agent.

For CTE's Services requiring drilling, boring, excavation or soils sampling, Client shall approve selection of the contractors to perform such services, all site locations, and provide CTE with all necessary information regarding the presence of underground hazards, utilities, structures and conditions at the site.

## XII.  MISCELLANEOUS

(a)  This Agreement constitutes the entire agreement between the parties hereto and supersedes any oral or written representations, understandings, proposals, or communications heretofore entered into by or on account of the parties and may not be changed, modified, or amended except in writing signed by the parties hereto.  In the event of any conflict between this contract document and any of the exhibits hereto, the terms and provisions of this contract document shall control.  In the event of any conflict among the exhibits, the exhibit of the latest date shall control.

(b)  This Agreement shall be governed by the laws of the State of Illinois.

(c)  ENGINEER may subcontract any portion of the Services to a subcontractor approved by

CLIENT.  In no case shall CLIENT's approval of any subcontract relieve ENGINEER of any of its obligations under this Agreement.  Notwithstanding the above, ENGINEER may have portions of the Services performed by its affiliated entities or their employees, in which event ENGINEER shall be responsible for such Services and CLIENT shall look solely to ENGINEER as if the Services were performed by ENGINEER.

(d)     In no event shall either party be liable to the other for indirect or consequential damages, including, but not limited to, loss of use, loss of profit or interruption of business, whether arising in contract, tort (including negligence), statute, or strict liability.

(e)     In the event CLIENT uses a purchase order form to administer this Agreement, the use of such form shall be for convenience purposes only, and any typed provision in conflict with the terms of this Agreement and all preprinted terms and conditions contained in or on such forms shall be deemed stricken and null and void.

(f)     This Agreement gives no rights or benefits to anyone other than CLIENT and ENGINEER and does not create any third party beneficiaries to the Agreement.

**IN WITNESS WHEREOF**, the parties hereto have executed this agreement on the day and year first above written.

CLIENT:  CITY OF GALESBURG, ILLINOIS

BY: _Gary C. Smith_

PRINTED NAME: _Gary C Smith_

TITLE: _Mayor_

DATE: _____

WITNESSED BY: _Anita J. Carlton_
_City Clerk_

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

BY: _Michael H. Winegard P.E._

PRINTED NAME: _Michael H. Winegard, P.E._

TITLE: _____Vice President_

DATE: _April 12, 2007_

ATTESTED BY: _____

## DIVISION "A"
## DESIGNS, CONTRACT DRAWINGS, SPECIFICATIONS
## AND OTHER CONTRACT DOCUMENTS

1.      Under Division "A" of the contract, the ENGINEER shall prepare designs, contract drawings, specifications and proposal forms, and shall assist the CLIENT's legal counsel in the preparation of contract forms by supplying needed information, and suggested performance and payment bond forms and all other features of a contract document.  The drawings shall be prepared using AutoCAD, with electronic copies provided to the CLIENT via diskette.  ENGINEER shall also provide CLIENT with reproducible Mylar copies of the drawings which include any addendum items. Technical specifications shall be prepared in the CSI format.  The scope of the work will be as presented in the attached Attachment "A."

2.      The ENGINEER shall submit the contract drawings, specifications and contract documents for approval by the CLIENT.

3.      The ENGINEER shall prepare estimates of the quantities and estimates of the construction costs for the improvements.

4.      The ENGINEER shall prepare contract documents necessary to obtain soil analyses, and similar operations which may be needed to obtain data for the design of the various features of the work.

5.      The ENGINEER shall supply copies of the plans and specification to governmental or private agencies whose approval is required.

6.      The ENGINEER shall, in accordance with a schedule to be mutually agreed, keep the CLIENT reasonably informed as to the design features of the proposed improvements.

7.      The ENGINEER shall provide for the CLIENT ten (10) copies of the contract drawings and specifications.  Any additional sets of contract drawings and specifications for bidding or other purposes shall be paid for by the CLIENT at prevailing commercial rates.

8.      The CLIENT shall be responsible for providing in a timely manner the acquisition of all easements, property sites, R/W or other property required for the Project and for the costs thereof, including the costs of any required land surveys in connection with such acquisitions, and any other information and data necessary for the ENGINEER to complete its work.

9.      The ENGINEER will perform the necessary field surveys and prepare specifications for soil borings at the site.  The CLIENT will then enter into an agreement with the soils firm directly.  Utilizing this information, final plans will be prepared along with specifications, contract documents and final cost estimates.  Construction documents will be reviewed through our formal Quality Assurance/Quality Control program.  The documents will be prepared in compliance with applicable codes, guidelines and standards.  When appropriate, required documentation will be sent to applicable governmental agencies in order to apply for necessary permits.

For the contract the following will pertain:

\\Jschg1-nt1\CTEAdmin\Dept.Admin\Water\Proposals\Galesburg\Professioanl Services Agreement Galesburg WTP-032007.doc

ENGINEER will prepare the Invitation to Bid and contact contractors who may be interested in submitting bids. The firm maintains a list of competent contractors and suppliers, classified by specialty and geographic location. From this list, qualified contractors will be recommended for this project, and upon selection by the CLIENT they will be sent a copy of the Notice to Bidders. Every reasonable effort will be made to interest the maximum number of contractors and suppliers in order to obtain the most competitive bids.

ENGINEER will serve as coordinator for all questions and comments during advertisement for bids. An attempt will be made to clarify all questions concerning the bidding of the project.

ENGINEER personnel will review all bids and make recommendations for the award of contracts, selection of equipment, etc. All bids will be reviewed by ENGINEER and we will give our opinion regarding the lowest responsible bidder. The contractor's proposed equipment will be analyzed and recommendations made regarding the most economical package for the CLIENT.

## DIVISION "B"
## EXTRA WORK

1.     The ENGINEER also agrees to furnish personnel under Division "B" for other miscellaneous services which may be requested by the CLIENT during the progress of the work performed under this Agreement.

2.     The ENGINEER shall proceed with the work under Division "B" <u>only upon written authorization</u> from the CLIENT.

<u>ATTACHMENT "A"</u>

Proposal for Professional Engineering Services for the Relocation of the Water Treatment Plant
Galesburg, Illinois

# 4.  Project Understanding and Approach

## Project Understanding

The City of Galesburg provides potable water to more than 40,000 customers.  The City obtains its groundwater supply from three (3) vertical gravel pack wells and one (1) horizontal Ranney well, all of which are located along the east bank of the Mississippi River in Oquawka, Illinois.  Chlorine is added to the groundwater at this site, then the water is pumped approximately 30.5 miles to the water treatment facilities located in the City of Galesburg.  The existing water treatment facilities consist of eight (8) gravity filters, each having a rated capacity of 1,000 gpm (1.44 mgd), for a total rated capacity of 11.5 mgd; two (2) finished water ground storage tanks, with capacities of 5 MG and 4 MG; and five (5) high service pumps, three of which are located in the primary pump station and two of which are located in the supplemental pump station.  Additionally, there are chemical storage and feed facilities for a filter aid, fluoride, and a corrosion inhibitor at the treatment plant site.

CTE performed a Water Division Planning Study for the City in November, 2005.  The study determined that the existing filters at the Main Street Water Treatment Plant have "outlived their useful life", and that the chlorination and pumping facilities are limited and may not be able to meet future demands.  This study recommended that a new water treatment plant be constructed at either the Main Street site or in Oquawka near the intake wells.

To determine the best location for a new water treatment plant, CTE completed a feasibility study in August 2006.  In this report, it was recommended that the new plant be relocated to Oquawka which will provide many benefits to the City.  These include the possibility of becoming an even greater regional provider of water; reduced amounts of chlorine in the transmission main which will help to prolong the life of the main and eliminate the monthly flushing which will also help prolong the life.  For these reasons, the City is now interested in the process needed to construct a new water treatment plant in Oquawka.

## Project Approach

Based on our understanding and our January 12, 2007 meeting, CTE has developed an approach that will meet the City's project goals while providing a smooth process from preliminary design to bidding and construction.  This approach relies on communication, Owner input and our technical expertise.  It will enable the City and CTE to make the recommendations from our Design Report (Report) a reality for Galesburg.



Proposal for Professional Engineering Services for the Relocation of the Water Treatment Plant
Galesburg, Illinois

Once selected, CTE will meet with City representatives to review the Report recommendation of constructing a new conventional water treatment plant (WTP) adjacent to Route 164. This meeting will also allow us to gather additional background information to insure that all desired features are included in design of the project. Throughout the course of the project, CTE will maintain on-going communication with the City to insure that everyone understands and agrees with the scope and progress.

This communication will be accomplished by means of design study workshops to be held at periodic milestones. It is envisioned that City personnel and CTE design engineers will participate in a joint manner to review the design status and options available and decisions reached on a joint basis. We suggest the City consider including the Illinois Environmental Protection Agency (IEPA) in at least some of these meetings to keep them apprised of the design being developed.

The first major item that will need to be decided will be where to locate the new WTP. As identified in the Report, the potential sites are located near the existing intake wells. The existing property owned by the City is large enough; but, it is located within the 100-year floodplain. Locating the new WTP at this site would involve permitting and construction challenges that would best be avoided. Of the available options, the City is interested in purchasing the Alternate 3 site identified in the Report. This selection was based on availability, proximity to Route 164 and overall space that will accommodate the proposed WTP plus future expansions. Regarding zoning, we contacted John Carrier, the Henderson Zoning Officer. He explained that we will need to apply for a Specialty Use permit. He recommended a pre-application meeting so that he could outline the process and provide the necessary forms. Mr. Carrier mentioned that the fee for Specialty Use applications is $300. Also, these applications are initially denied in order to convene a meeting of the Henderson County Zoning Committee to review and discuss the proposed project. Approval by the Henderson County Appeals Board and County Board will also be needed to rezone the proposed site from agricultural to industrial use.

With a selected site, the preliminary design phase will begin. CTE will prepare a topographic survey of the site which will identify topographical information and elevations. With the survey, we will be able to confirm the proposed plant layout provided in the Report. Finally, we will obtain soil borings of the proposed site utilizing an independent testing firm. This proposal includes 9 borings at 35 feet deep and 2 borings at 70 feet deep.

While surveying and geotechnical data is being collected, our Water Resources Department will identify potential equipment to be used at the facility based on the required capacity and treatment requirements from the Report. We will consider the following:
- Ease of operation
- Maintenance requirements
- Future regulatory requirements
- Cost



Proposal for Professional Engineering Services for the Relocation of the Water Treatment Plant
Galesburg, Illinois

The possible equipment will be reviewed with City personnel. Once the various equipment types have been selected, CTE's Architectural Department will prepare layouts and building elevations in concert with the hydraulic profile of the treatment plant. Our Structural Department will design the building and tank foundations based upon the layout equipment weights and soil boring information. By this time, our Water Resources Department will have prepared layouts of the proposed pipes, pumping and valving. The Electrical and Mechanical Departments will size the motor control centers, heating, ventilation and plumbing requirement, flood drainage and determine the lighting requirements. The Electrical Department's design will also address standby power. They will evaluate if the existing generator at Raw Water Wells can be used at the new WTP. If so, then a new smaller generator will be provided at the Raw Water Wells. CTE's Instrumentation Engineers will meet with the City in order to develop one SCADA system for the all the City's water treatment facilities. The new system will replace the two existing systems and provide two way communication and control between the plants. There will be two-1.0 million gallon above ground prestressed concrete reservoirs constructed to store finished water. Piping and valves will be provided so that additional reservoirs can be added in the future. Our Site Department will prepare improvements including parking, driveways and landscaping. Finally, the Architectural Department will select a pre-engineered building system to house the new WTP. Their design will also include a brick face alternative for the building to be included if funding is available. All of this will be accomplished by means of periodic meetings with City personnel. At the end of preliminary design, CTE will prepare our "Opinion of Estimated Construction Costs" for the required improvements and submit it to the City of Galesburg for review and consideration. We will also provide a list of possible funding sources and their requirements for this project.

A proposed site plan and WTP layout are included on the next 2 pages.

Once the required improvements have been agreed upon, CTE will then begin final design by preparing detailed drawings, specifications and contract documents to be used to construct the new WTP. CTE will also prepare all required permit applications for the purpose of obtaining the approval and issuance of a construction permit from the IEPA and other appropriate agencies.

When the City is ready to construct the new WTP, CTE will assist the City of Galesburg by preparing the Invitation to Bidders, advertisements suitable for publication, and contact contractors who may be interested in submitting cost proposals. CTE maintains a list of qualified contractors and suppliers to whom a copy of the Invitation to Bidders will be sent. CTE will also assist the City with the distribution of the Contract Documents (Specifications and Contract Drawings) to all potential/prospective bidders and/or plan review houses. CTE would serve as the coordinator for all questions and comments during the advertisement for bids. Additionally, CTE will provide bid opening services including our review and evaluation of all of the bids received, together with our recommendation to the City for an award of contract.





## PLAN

SCALE: 1" = 80'

NEW WTP SITE LAYOUT

CTE | AECOM

CTE
303 East Wacker Drive, Suite 600, Chicago, Illinois 60601-5276
T 312.938.0300 F 312.938.1109 www.cte.aecom.com



PLAN

CTE | AECOM

SCALE: 1" = 40'

NEW WTP LAYOUT

Proposal for Professional Engineering Services for the Relocation of the Water Treatment Plant
Galesburg, Illinois

## Quality Assurance/Quality Control

Since its establishment in 1919, CTE has maintained a "quality assurance" program
for each of its engineering projects. It has always been the responsibility of senior
officers of the firm to see that projects meet the highest standards of engineering
quality and attain client goals. Review committees and checklists are standard
corporate and project management policy.

Recognizing the important role that quality assurance plays in developing effective
projects, CTE formalized its Quality Assurance Program (QAP) in 1984. The
program has been developed and is continually updated to remain consistent with
professional engineering standards.

**Procedures, Management, and Experience**

The QAP is designed to ensure that appropriate technical, procedural and client
standards are met for all data, calculations, reports, contract drawings, specifications,
permits and inspection services prepared or performed by our firm. It includes such
procedures as scheduling; coordinating and assigning work; recording, retaining and
retrieving project records; identifying and resolving matters affecting the project; and
reviewing for compliance with the specific quality assurance project plan.

Under the QAP, all work tasks -- whether new or changes to existing design -- are
defined, scheduled and assigned by the Project Manager.

The QAP may be modified to meet the needs of individual projects or to comply with
the client's specific requirements. Modifications to the QAP must be approved by the
QA officer and the Project Manager. The QAP also defines the organization to be
implemented and the responsibility and authority of the personnel involved.

Provisions are made in the QAP for periodic reviews and updates. This provides for
improvements by correcting problems detected from experience with the program.
Any instructions issued to personnel that conflict with the requirements of the QAP
are brought to the attention of the Project Manager prior to their implementation.

For every project, independent checks by senior level personnel are utilized with a
checklist system. After extensive experience, detailed checklists have been
developed to insure proper coordination and review of all reports, designs, plans and
specifications. Coordinating checklists are utilized in an attempt to minimize conflicts
between the different disciplines on a project.

The QA Officer audits the files and the project to ascertain that the proper QAP
procedures developed for this project are being followed. Any apparent
shortcomings in the procedures are modified or corrected.

The importance CTE places on its Quality Assurance Program is illustrated by the
fact that it is operated independently under the direction of a Vice President, who
reports directly to CTE's President. James Klug serves as CTE's Quality Assurance
Director.

All CTE staff members have undergone rigorous training in their respective
disciplines. CTE staff members attend seminars and are encouraged to participate in
professional societies in order to increase their knowledge and keep up to date with
current developments their respective fields.



Proposal for Professional Engineering Services for the Relocation of the Water Treatment Plant
Galesburg, Illinois

## Proposed Contract Drawings and Specifications

CTE's CAD system currently utilizes AutoCAD 2006. Therefore, all of the contract drawings for this Project will be prepared using AutoCAD 2006. Additionally, CTE prepares contract specifications for all projects in the CSI Spec-Text format utilizing Word. Lists of the proposed contract drawings and specifications follow.

## List of Proposed Contract Drawings

Our list of proposed contract drawings for the City of Galesburg, Relocation of the Water Treatment Plant

**GENERAL**

| | |
|---|---|
| G-1 | COVER SHEET AND LOCATION MAP |
| G-2 | SHEET INDEX, LEGENDS & SYMBOLS AND GENERAL NOTES |

**AREA 1 – RAW WATER PUMPS**

PROCESS
| | |
|---|---|
| 1P-1 | DEMOLITION PLAN, SECTIONS AND DETAILS |
| 1P-2 | PROPOSED PLAN, SECTIONS AND DETAILS |

ELECTRICAL
| | |
|---|---|
| 1E-1 | DEMOLITION PLAN, SECTIONS AND DETAILS |
| 1E-2 | PROPOSED PLAN, SECTIONS AND DETAILS |

**AREA 2 – SITE DEVELOPMENT**

SITE DEVELOPMENT
| | |
|---|---|
| 2SD-1 | SITE PLAN – PAVING, GRADING AND DRAINAGE |
| 2SD-2 | SITE DEVELOPMENT DETAILS |

PROCESS
| | |
|---|---|
| 2P-1 | SITE PLAN – OUTSIDE PIPING |

MECHANICAL
| | |
|---|---|
| 2M-1 | SEPTIC FIELD AND DETAILS |

ELECTRICAL
| | |
|---|---|
| 2E-1 | ELECTRICAL SITE PLAN |

**AREA 3 – MAIN BUILDING**

ARCHITECTURAL
| | |
|---|---|
| 3A-1 | GRADE FLOOR PLAN |
| 3A-2 | DETAIL FLOOR PLAN |
| 3A-3 | DETAIL FLOOR PLAN |
| 3A-4 | DETAIL FLOOR PLAN |
| 3A-5 | BUILDING SECTIONS |
| 3A-6 | ELEVATIONS |
| 3A-7 | ROOF PLAN AND DETAILS |

CTE | AECOM

Proposal for Professional Engineering Services for the Relocation of the Water Treatment Plant
Galesburg, Illinois

3A-8    WALL SECTIONS
3A-9    STANDARD DETAILS AND SCHEDULES

STRUCTURAL
3S-1    AERATORS PLANS, SECTIONS AND DETAILS
3S-2    FOUNDATION PLAN AND NOTES
3S-3    GRADE FLOOR PLAN AND NOTES
3S-4    UPPER FLOOR PLAN AND NOTES
3S-5    SECTIONS
3S-6    SECTIONS
3S-7    SECTIONS
3S-8    SECTIONS
3S-9    SECTIONS
3S-10   SECTIONS
3S-11   SECTIONS
3S-12   SECTIONS
3S-13  SCHEDULES, SECTIONS AND DETAILS

PROCESS
3P-1    UPPER PLAN – AERATORS, CONTACT TANKS AND FILTERS
3P-2    LOWER PLAN – AERATORS, CONTACT TANKS AND FILTERS
3P-3    UPPER PLAN – PUMPS AND CHEMICAL FEED
3P-4    LOWER PLAN – PUMPS AND CHEMICAL FEED
3P-5    SECTIONS
3P-6    SECTIONS AND DETAILS

MECHANICAL
3M-1    SYMBOLS AND NOTES
3M-2    HVAC – FLOOR PLAN
3M-3    HVAC – ROOF PLAN
3M-4    HVAC – DETAILS AND SCHEDULES
3M-5    PLUMBING – FLOOR PLAN
3M-6    PLUMBING – DIAGRAMS
3M-7    PLUMBING – DETAILS AND SCHEDULES

ELECTRICAL
3E-1    LIGHTING AND RECEPTACLE PLAN
3E-2    POWER PLAN
3E-3    SINGLE LINE DIAGRAM
3E-4    PANEL SCHEDULES AND MCC ELEVATION
3E-5    SCHEMATIC DIAGRAMS

**AREA 4 – FINISHED WATER STORAGE**

STRUCTURAL
4S-1    PLAN, SECTIONS AND NOTES

PROCESS
4P-1    RESERVOIR – PLAN, SECTIONS AND DETAILS

**AREA 5 – TREATED WATER TRANSMISSION MAIN**

PROCESS
5P-1    PLAN AND CONNECTION DETAILS

CTE | AECOM

Proposal for Professional Engineering Services for the Relocation of the Water Treatment Plant
Galesburg, Illinois

### AREA 6 – WASTE DISPOSAL FACILITIES

PROCESS
6P-1    DECANT PUMP STATION PLANS, SECTIONS AND DETAILS (WITH
          STRUCTURAL AND
          ELECTRICAL INFORMATION)
6P-2    LAGOONS – PLAN, SECTIONS AND DETAILS

### AREA 7 – EXISTING TREATMENT PLANT

PROCESS
7P-1    MODIFICATIONS TO EXISTING TREATMENT PLANT

### INSTUMENTATION

ELECTRICAL
I-1     STANDBY POWER PLAN AND DETAILS
I-2     SCADA AND INSTUMENTATION
I-3     SCADA AND INSTUMENTATION

### FLOW DIAGRAMS

PROCESS
PF-1    HYDRAULIC PROFILE
PF-2    PROCESS FLOW DIAGRAM
PF-3    CHEMICAL FEED FLOW DIAGRAMS

### STANDARDS, SCHEDULES AND DETAILS

ARCHITECTURAL
XA-1 AND XA-2       STANDARD DETAILS

STRUCTURAL
XS-1 THROUGH XS-3  MISCELLANEOUS DETAILS AND STANDARDS

PROCESS
XP-1    PUMP & VALVE SCHEDULES AND MISCELLANEOUS CONSTRUCTION
          DETAILS

ELECTRICAL
XE-1    ELECTRICAL DETAILS
XE-2    ELECTRICAL SYMBOLS

CTE | AECOM

Proposal for Professional Engineering Services for the Relocation of the Water Treatment Plant
Galesburg, Illinois

## List of Proposed Contract Specifications

The following is our list of proposed contract specifications, Division 1 through 16 for
the City of Galesburg, Relocation of the Water Treatment Plant

### SPECIFICATION SECTIONS

### DIVISION 1 – GENERAL REQUIREMENTS

| | |
|---|---|
| 01100 | SUMMARY |
| 01200 | PRICE AND PAYMENT PROCEDURES |
| 01300 | ADMINISTRATIVE REQUIREMENTS |
| 01330 | SUBMITTAL PROCEDURES |
| 01400 | QUALITY REQUIREMENTS |
| 01420 | REFERENCES |
| 01500 | TEMPORARY FACILITIES AND CONTROLS |
| 01600 | PRODUCT REQUIREMENTS |
| 01700 | EXECUTION REQUIREMENTS |
| 01810 | OMMISSIONING |

### DIVISION 2 – SITE CONSTRUCTION

| SECTION | TITLE |
|---|---|
| 02055 | SOILS |
| 02060 | AGGREGATE |
| 02084 | PRECAST CONCRETE UTILITY STRUCTURES |
| 02086 | HYDRANTS |
| 02230 | SITE CLEARING |
| 02241 | DEWATERING |
| 02311 | ROUGH GRADING |
| 02315 | EXCAVATION AND FILL |
| 02320 | BACKFILL |
| 02324 | TRENCHING |
| 02374 | EROSION CONTROL DEVICES |
| 02514 | DUCTILE IRON PIPE WATER MAIN |
| 02516 | DISINFECTION OF WATER DISTRIBUTION SYSTEMS |
| 02518 | THRUST RESTRAINTS |
| 02519 | BURIED VALVES |
| 02539 | SANITARY SEWER SYSTEM |
| 02540 | SEPTIC TANK SYSTEMS |
| 02621 | FOUNDATION DRAINAGE PIPING |
| 02630 | STORM DRAINAGE |
| 02633 | MANHOLES, FRAMES, AND COVERS |
| 02721 | AGGREGATE BASE COURSE |
| 02740 | FLEXIBLE PAVEMENT |
| 02750 | RIGID PAVEMENT |
| 02763 | PAINTED PAVEMENT MARKINGS |
| 02821 | CHAIN LINK FENCES AND GATES |
| 02923 | LANDSCAPE GRADING |
| 02924 | SEEDING AND SOIL SUPPLEMENTS |
| 02925 | SODDING |
| 02930 | EXTERIOR PLANTS |



Proposal for Professional Engineering Services for the Relocation of the Water Treatment Plant
Galesburg, Illinois

## DIVISION 3 – CONCRETE

| SECTION | TITLE |
|---|---|
| 03100 | CONCRETE FORMS AND ACCESSORIES |
| 03200 | CONCRETE REINFORCEMENT |
| 03300 | CAST-IN-PLACE CONCRETE |
| 03350 | CONCRETE FINISHING |
| 03390 | CONCRETE CURING |
| 03930 | CONCRETE REHABILITATION |

## DIVISION 4 – MASONRY

| SECTION | TITLE |
|---|---|
| 04065 | MASONRY MORTAR AND GROUT |
| 04810 | UNIT MASONRY ASSEMBLIES |
| 04820 | REINFORCED UNIT MASONRY ASSEMBLIES |

## DIVISION 5 – METALS

| SECTION | TITLE |
|---|---|
| 05120 | STRUCTURAL STEEL |
| 05500 | METAL FABRICATIONS |
| 05508 | STEEL SERVICE PLATFORMS |
| 05510 | METAL STAIRS AND LADDERS |
| 05520 | HANDRAILS AND RAILINGS |
| 05530 | GRATINGS |
| 05810 | EXPANSION JOINT COVER ASSEMBLIES |

## DIVISION 6 – WOOD AND PLASTICS

| SECTION | TITLE |
|---|---|
| 06114 | WOOD BLOCKING AND CURBING |

## DIVISION 7 – THERMAL AND MOISTURE PROTECTION

| SECTION | TITLE |
|---|---|
| 07140 | FLUID-APPLIED WATERPROOFING |
| 07212 | BOARD INSULATION |
| 07720 | PREFABRICATED ROOF SUPPORTS |
| 07724 | ROOF HATCHES |
| 07840 | FIRESTOPPING |
| 07900 | JOINT SEALERS |

## DIVISION 8 – DOORS AND WINDOWS

| SECTION | TITLE |
|---|---|
| 08114 | STANDARD STEEL DOORS |
| 08115 | STANDARD STEEL FRAMES |
| 08220 | PLASTIC DOORS AND FRAMES |
| 08333 | OVERHEAD COILING DOORS |
| 08410 | METAL – FRAMED STOREFRONTS |
| 08520 | ALUMINUM WINDOWS |
| 08710 | DOOR HARDWARE |
| 08800 | GLAZING |

CTE | AECOM

Proposal for Professional Engineering Services for the Relocation of the Water Treatment Plant
Galesburg, Illinois

## DIVISION 9 – FINISHES

| SECTION | TITLE |
|---------|-------|
| 09260 | GYPSUM BOARD ASSEMBLIES |
| 09510 | ACOUSTICAL CEILINGS |
| 09650 | RESILIENT FLOORING |
| 09676 | RESINOUS FLOORING |
| 09900 | PAINTS AND COATINGS |
| 09960 | HIGH PERFORMANCE COATINGS |
| 09965 | CONCRETE WATER STORAGE TANK PAINTING |

## DIVISION 10 – SPECIALTIES

| SECTION | TITLE |
|---------|-------|
| 10100 | VISUAL DISPLAY BOARDS |
| 10160 | METAL TOILET COMPARTMENTS |
| 10210 | WALL LOUVERS |
| 10431 | BUILDING SIGNAGE |
| 10440 | INTERIOR SIGNAGE |
| 10500 | LOCKERS |
| 10523 | FIRE EXTINGUISHERS AND ACCESSORIES |
| 10800 | TOILET AND BATH ACCESSORIES |

## DIVISION 11 – EQUIPMENT

| SECTION | TITLE |
|---------|-------|
| 11212 | SPLITCASE CENTRIFUGAL PUMPS |
| 11214 | WET PIT PUMPS |
| 11215 | CHEMICAL TRANSFER PUMPS |
| 11216 | DIAPHRAGM METERING PUMPS |
| 11253 | DRY CHEMICAL FEED EQUIPMENT |
| 11254 | LIQUID CHEMICAL FEED EQUIPMENT |
| 11360 | GRAVITY FILTRATION |
| 11379 | INDUCED DRAFT AERATORS |
| 11401 | LUNCH ROOM EQUIPMENT |
| 11402 | APPLIANCES |
| 11600 | LABORATORY EQUIPMENT |

## DIVISION 12 – FURNISHINGS

| SECTION | TITLE |
|---------|-------|
| 12310 | MANUFACTURED METAL CASEWORK |

## DIVISION 13 – SPECIAL CONSTRUCTION

| SECTION | TITLE |
|---------|-------|
| 13100 | LIGHTNING PROTECTION SYSTEMS |
| 13121 | PRE-ENGINEERED BUILDINGS |
| 13205 | GLASS FIBER REINFORCED CHEMICAL STORAGE TANKS |
| 13206 | CONCRETE WATER STORAGE TANK |
| 13209 | WATER TANK DISINFECTION |
| 13218 | CHEMICAL STORAGE TANKS |
| 13400 | FIELD MOUNTED INSTRUMENTATION EQUIPMENT |
| 13410 | MAGNETIC FLOWMETERS |

CTE | AECOM

Proposal for Professional Engineering Services for the Relocation of the Water Treatment Plant
Galesburg, Illinois

## DIVISION 14 – CONVEYING SYSTEMS
14621          HOIST SYSTEMS - MONORAIL TYPE

## DIVISION 15 – MECHANICAL

| SECTION | TITLE |
|---|---|
| 15050 | BASIC MECHANICAL REQUIREMENTS |
| 15060 | SUPPORTS AND ANCHORS |
| 15221 | PROCESS PIPING AND APPURTENANCES |
| 15222 | VALVES AND GATES FOR PROCESS PIPING |
| 15760 | THERMAL HEATING UNITS |
| 15901 | INSTRUMENTATION AND CONTROL ELEMENTS |
| 15940 | SEQUENCE OF OPERATION |

## DIVISION 16 – ELECTRICAL

| SECTION | TITLE |
|---|---|
| 16011 | SHORT CIRCUIT AND PROTECTIVE DEVICE COORDINATION STUDY |
| 16060 | GROUNDING AND BONDING |
| 16070 | ELECTRICAL HANGERS AND SUPPORTS |
| 16075 | ELECTRICAL IDENTIFICATION |
| 16123 | BUILDING WIRE AND CABLE |
| 16130 | RACEWAY AND BOXES |
| 16131 | CABINETS AND ENCLOSURES |
| 16140 | WIRING DEVICES |
| 16210 | ELECTRIC UTILITY SERVICE |
| 16225 | MOTORS |
| 16235 | ENGINE GENERATORS |
| 16261 | STATIC UNINTERRUPTIBLE POWER SUPPLIES |
| 16265 | VARIABLE FREQUENCY DRIVE |
| 16271 | PAD-MOUNTED TRANSFORMERS |
| 16281 | LOW-VOLTAGE POWER FACTOR CAPACITORS |
| 16289 | TRANSIENT VOLTAGE SURGE SUPPRESSORS |
| 16411 | ENCLOSED SWITCHES |
| 16413 | ENCLOSED TRANSFER SWITCH |
| 16442 | PANELBOARDS |
| 16443 | MOTOR CONTROL CENTERS |
| 16461 | DRY TYPE TRANSFORMERS |
| 16510 | INTERIOR LUMINAIRES |
| 16520 | EXTERIOR LUMINAIRES |
| 16530 | EMERGENCY LIGHTING |
| 16902 | ELECTRIC CONTROLS AND RELAYS |
| 16990 | ELECTRICAL POWER SYSTEM STUDIES |

## Project Schedule

On the following page, we have included our project schedule for the design phase of the project (six months).  We believe that the actual construction will take between 1 ½ and 2 years.

CTE | AECOM





Galesburg, Illinois
Relocation of the Water Treatment Plant

| | MARCH | | | JUNE | | | MAY | | | | JUNE | | | | JULY | | | | AUGUST | | | | SEPTEMBER | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 19 | 26 | 2 | 9 | 16 | 23 | 30 | 7 | 14 | 21 | 28 | 4 | 11 | 18 | 25 | 2 | 9 | 16 | 23 | 30 | 6 | 13 | 20 | 27 | 3 | 10 |
| Award of Contract | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Initial Design Meeting | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Prepare Process Schedule | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Survey Work | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Soil Borings | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Meeting with Illinois EPA | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Interaction with Utility Companies | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Prepare Narrative Description | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Prepare Construction Sequence | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Submit Design Memorandum | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Review Design Memorandum | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Meeting to Review Design Memo | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Prepare Preliminary Plans | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Prepare Preliminary Specifications | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Prepare Preliminary Cost Estimate | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Review Preliminary Plans, Specifications and Cost Estimate | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Meeting to Review Prelim. Design | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Prepare Final Plans | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Prepare Final Specifications | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Prepare Final Cost Estimate | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Meeting to Review Final Design | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Submit Permit Application(s) | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Review Final Design | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Submit Final Design Information | | | | | | | | | | | | | | | | | | | | | | | | | | |

EXHIBIT "B"

4. Project Understanding and Approach - 15

Proposal for Professional Engineering Services for the Relocation of the Water Treatment Plant
Galesburg, Illinois

## Fee Structure

CTE proposes to perform the design (Division A) services based on a multiplier of 2.15 times the "salary cost of engineering and technical personnel" expended in performing this work.  The term "salary costs of engineering and technical personnel" shall mean the actual wages paid to those members of staff who are classified as officers, engineers, technicians, draftsmen and field party personnel and who perform services under this Agreement plus employees' benefits which include state and federal taxes, social security, employment and retirement benefits as defined in the American Society of Civil Engineers (ASCE) Manual No. 45.

Our not-to-exceed fee is as follows:
    Design Services              $670,000.00
    Bidding Services             $15,000.00

The total fees would be as follows:
    Design Services and Bidding      $685,000.00

A breakdown of this fee is as follows:

| Discipline | Manhours | Engineering Fee |
|---|---|---|
| Architectural | 996 | $99,296.00 |
| Structural | 1,521 | $194,426.00 |
| Process/Project Management | 1,989 | $198,720.00 |
| Mechanical | 702 | $78,822.00 |
| Electrical/Instrumentation | 828 | $92,736.00 |
| Total | 6,036 | $664,000.00 |
| | | |
| Soil Borings | Whitney & Associates, Inc. | $10,000.00 |
| Surveying | Bruner, Cooper & Zuck, Inc. | $11,000.00 |
| Total Engineering Fee | | $685,000.00 |

CTE is also open to other types of contracts such as lump sum, cost plus fixed fee, etc.  We will be happy to discuss any of these contract types with the City.

For the services rendered by the ENGINEER under Division "B," payment shall be based on a multiplier of 2.15 times the "salary costs of engineering and technical personnel" expended in performing the work.  The term "salary costs of engineering and technical personnel" shall mean the actual wages paid to those members of staff who are classified as officers, engineers, technicians, draftsmen and field party personnel and who perform services under this Agreement plus employees' benefits which include state and federal taxes, social security, employment and retirement benefits as defined in the American Society of Civil Engineers (ASCE) Manual No. 45.



## AMENDMENT NO. 1 TO ENGINEERING AGREEMENT

This is an Amendment dated this ____21st____ day of ____April____, 2008, (the "Amendment) to the original Agreement for Engineering Services between the CITY OF GALESBURG, ILLINOIS (the "Client") and CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC. ("Engineer"), dated April 12, 2007 (referred to herein as the "Agreement").

WHEREAS, the ENGINEER and the Client entered into an agreement whereas the Engineer was authorized to provide certain services to the Client.

WHEREAS, the Client and the Engineer now desire to amend the Agreement in order to specify additional scope of work and compensation thereof.

NOW THEREFORE, it is mutually agreed as follows:

1.    The scope of services set forth in Exhibit A of the Agreement is hereby amended to include those services described in Exhibit A of this Amendment.

2.    Exhibit B of the Agreement is hereby amended to include the additional compensation noted in Exhibit B of this Amendment.

All other nonconflicting provisions of the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the CITY OF GALESBURG, ILLINOIS, Owner by its Mayor, and the Engineering Firm of CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC., by Michael H. Winegard, Vice President, have caused this Addendum to the Engineering Agreement to be signed this ____21st____ day of ____April____, 2008.

CITY OF GALESBURG, ILLINOIS

By: _____

Title: _____Mayor_____

WITNESS:

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

By: _____

Michael H. Winegard, P.E.
Vice President

WITNESS:

**EXHIBIT**
**B**

CTE | AECOM

CTE | AECOM

**CTE**
303 East Wacker Drive, Suite 600, Chicago, IL 60601-5276
T 312.938.0300  F 312.938.1109  www.aecom.com

## EXHIBIT A

April 11, 2008

Mr. Larry Cox
Director of Public Works
City Hall
55 West Tompkins Street
Galesburg, IL  61401

**Reference:**    Galesburg, Illinois
Relocation of the Water Treatment Plant
CTE Project No.: 60023958

Dear Mr. Cox:

Per your e-mail of March 7, 2008, Consoer Townsend Envirodyne Engineers, Inc. (CTE) is presenting this Proposal to provide the following construction related activities.

1.    CTE will consult and advise on the interpretation of contract documents.  Furnish engineering advice and consulting services during the construction period, by correspondence and telephone with the City of Galesburg or their representative.

Duration of construction slated for 107 weeks, 107 weeks x 6 hours/week = 642 hours @ $135.00/hour = $86,670.00.

2.    CTE will review and approve shop drawings, product data and samples, but only for the limited purpose of checking for conformance with the information given and the design concept expressed in the drawings and technical specifications.  Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities or for substantiating instructions for installation or performance of equipment or systems designed by the Contractor.  When professional certification of performance characteristics of materials, systems or equipment is required of the Contractor by the drawings or technical specifications, CTE shall be entitled to rely upon such certification.  Submittals shall be returned within 30 days of receipt by the Engineer.

| Department | Hours | Fee |
|---|---|---|
| Architectural | 180 | $ 24,300 |
| Structural | 415 | $ 56,025 |
| Process/Project Management | 280 | $ 37,800 |
| Mechanical | 80 | $ 13,200 |
| Electrical/Instrumentation | 200 | $ 27,000 |
| **Total** | **1,155** | **$158,325** |

Mr. Larry Cox
April 11, 2008
Page 2

3.      CTE will attend the preconstruction conference.

        16 hours @ $150.00/hour = $2,400.00

4.      CTE will make periodic field site inspections of the construction site at significant
        progress points during the project.  Total number of site visits will be approximately
        twelve (12).

        12 visits x 8 hours/visit = 96 hours
        @ $240.00/hour = $23,040.00

5.      CTE will compile and file with the City within 90 days of the conclusion of the
        construction work a set of reproducible prints on which have been indicated significant
        changes in the construction work as recorded.  Recording shall be by the City or their
        representative.

        120 hours @ $90.00/hour = $10,800.00

Based on the above, we estimate that a total of 2,029 hours will be utilized and the estimated
total fee is $281,235.00.

We will be happy to sit down and discuss this Proposal with you.  As always, you will only be
charged for the actual number of hours utilized.  Should you have any questions in the
meantime, please do not hesitate to contact us.

Very truly yours,

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

Michael H. Winegard, P.E.
Vice President

MHW/dp

G:\Engineering\60023958\P60023958\200_Correspondence\202_External Correspondence\202.1_Client\041108-Exhibit A-Cox.doc

CTE | AECOM

# **EXHIBIT B**

**Fee Structure**

For the services rendered by the ENGINEER under Division "B," payment shall be based on a multiplier of 2.15 times the "salary costs of engineering and technical personnel" expended in performing the work.   The term "salary costs of engineering and technical personnel" shall mean the actual wages paid to those members of staff who are classified as others, engineers, technicians, draftsmen and field party personnel and who perform services under this Agreement plus employees' benefits which include state and federal taxes, social security, employment and retirement benefits as defined in the American Society of Civil Engineers (ASCE) Manual No. 45.

Per Exhibit A, the fee for these additional services shall not exceed $281,235.00 without further authorization.

CTE | AECOM

# AMENDMENT NO. 2 TO ENGINEERING AGREEMENT

This is an Amendment dated this _____7th_____ day of ____December____, 2009, (the "Amendment) to the original Agreement for Engineering Services between the CITY OF GALESBURG, ILLINOIS (the "Client") and AECOM TECHNICAL SERVICES, INC. ("Engineer"), dated April 12, 2007 (referred to herein as the "Agreement").

WHEREAS, the ENGINEER and the Client entered into an agreement whereas the Engineer was authorized to provide certain services to the Client.

WHEREAS, the Client and the Engineer now desire to amend the Agreement in order to specify additional scope of work and compensation thereof.

NOW THEREFORE, it is mutually agreed as follows:

1.     The scope of services set forth in Exhibit A of the Agreement is hereby amended to include those services described in Exhibit A of this Amendment.

2.     Exhibit B of the Agreement is hereby amended to include the additional compensation noted in Exhibit A of this Amendment.

All other nonconflicting provisions of the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the CITY OF GALESBURG, ILLINOIS, Owner, and the Engineering Firm of AECOM TECHNICAL SERVICES, INC., have caused this Addendum to the Engineering Agreement to be signed this _7th___ day of __December_____, 2009.

CITY OF GALESBURG, ILLINOIS

By: _____

Title: _____Mayor_____

WITNESS:

_Kelli R. Bennewitz_

AECOM TECHNICAL SERVICES, INC.

By: _____

Title: _Vice President_____

WITNESS:

EXHIBIT
C

|AECOM

EXHIBIT A

**AECOM**
303 East Wacker Drive, Suite 600, Chicago, IL 60601-5276
T 312.938.0300  F 312.938.1109  www.aecom.com

October 16, 2009

Mr. Larry Cox
Director of Public Works
City of Galesburg
City Hall
55 W. Tompkins Street
Galesburg, IL 61401

**Reference:**    City of Galesburg, Illinois
Relocation of the Water Treatment Plant
AECOM Project No.: 60023958

Dear Larry:

As we discussed on my visit to Galesburg on September 28, 2009, we would like to point out the following paragraph from the Contract Specifications. On page 1330-2, paragraph 1.2.P, it states the following:

"Revise and resubmit as required, identify all changes made since previous submittal. In the event that more than one re-submittal of any required submittal is necessary to make such required submittal conform to the contract requirements, Contractor shall be charged the total cost incurred by the Engineer for all subsequent reviews or required submittals. If the amount due Contractor is not sufficient to cover such cost, contractor shall reimburse Owner for such cost upon demand.

1.     The Engineer's charges will be based on the Engineer's actual labor and expenses at the same rate the Owner is charged."

As of this date, twenty submittals fit that category.  They are:

Galesburg No. of Charged House for Submittals Past Third Submittal

| Section | Description | Reviewer | Date Sent | Charged Hours |
|---|---|---|---|---|
| 03200.2.D | Concrete Submittal | AAG | 7/8/2008 | 2 |
| 03200.3.D | Concrete Reinforcing | AAG | 8/25/2008 | 2 |
| 03200.4.D | Concrete Reinforcing | AAG | 8/25/2008 | 2 |
|  |  | EMM |  | 1 |
| 03300.1.D | Cast-In-Place Concrete | AAG | 7/30/2008 | 2 |
| 03300.1.E | Cast-In-Place Concrete | AAG | 8/5/2008 | 1 |
|  |  | EMM |  | 1 |

Mr. Larry Cox
October 16, 2009
Page 2

| Section | Description | Reviewer | Date Sent | Charged Hours |
|---------|-------------|----------|-----------|---------------|
| 03480.1.D | Precast Concrete Valve and Meter Vaults | AAG | 4/22/2009 | 3 |
| | | EMM | | 1 |
| 05500.1.D | Metal Fabrications | AAG | 10/1/2009 | 1 |
| | | JP | | 1 |
| 05510.1.D | Metal Stairs and Ladders | AAG | 10/1/2009 | 1 |
| | | JP | | 1 |
| 05520.1.D | Handrails and Railings | AAG | 2/12/2009 | 1 |
| | | JP | | 1 |
| 05520.1.E | Handrails and Railings | JP | 6/15/2009 | 1 |
| 05520.1.F | Handrails and Railings | AAG | 9/10/2009 | 1 |
| 13121.1.D | Pre-Engineered Buildings | AAG | 10/6/2008 | 4 |
| | | EMM | | 1 |
| 13121.2.D | Pre-Engineered Buildings | AAG | 12/12/2008 | 4 |
| | | JP | | 2 |
| | | EMM | | 1 |
| 13121.2.E | Pre-Engineered Building | AAG | 3/17/2009 | 6 |
| | | JP | | 2 |
| | | EMM | | 1 |
| 13121.2.F | Pre-Engineered Building | AAG | 5/7/2009 | 2 |
| | | JP | | 2 |
| | | EMM | | 1 |
| 13121.4.D | Pre-Engineered Buildings | AAG | 10/27/2008 | 3 |
| | | EMM | | 1 |
| 13121.4.E | Pre-Engineered Buildings | AAG | 11/6/2008 | 2 |
| 13121.5.D | Pre-Engineered Buildings (Calculations) | AAG | 3/17/2009 | 2 |
| | | EMM | | 1 |
| 13121.5.E | Pre-Engineered Building | AAG | 5/7/2009 | 1 |
| 13206.1.D | Concrete Water Storage Tanks | AAG | 8/11/2008 | 10 |
| | | EMM | | 1 |
| | | | | 70 |

W:\2010\10023950\10023950\200_Correspondence\202_Consump.Correspondence\202_1_Client\091015-Cox.doc

AECOM

Mr. Larry Cox
October 16, 2009
Page 3

Based on the above, our fees that have already been invoiced and paid by the City are as
follows:

**2008**

| | | | |
|---|---|---|---|
| Art Goodfriend | 9 hours x $88.07 x 2.25 | = | $ 1,783.42 |
| Liz Matson | 2 hours x $38.63 x 2.25 | = | $   173.84 |

**2009**

| | | | |
|---|---|---|---|
| Art Goodfriend | 41 hours x $91.60 x 2.25 | = | $ 8,450.10 |
| Jonas Packer | 10 hours x $64.12 x 2.25 | = | $ 1,442.70 |
| Liz Matson | 8 hours x $41.73 x 2.25 | = | $   751.14 |
| | | Total  = | **$12,601.20** |

As our contract is with the City, and the City has already paid these invoices, you should
deduct these charges from the next invoice from Leander. Thus, our not-to-exceed cost for
construction services will be increased from $281,235.00 to $293,836.20; the difference being
the $12,601.20.

Please let us know if you have any questions. Please confirm to us that you agree to this so
that we can amend our contract with you to reflect the above. If any future submittals fit the
above guidelines, we will notify you with the same information.

Very truly yours,

AECOM USA, INC.

Michael H. Winegard, P.E.
Vice President

MHW/dp

AECOM

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| THE CITY OF GALESBURG,<br>An Illinois municipal corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| AECOM USA, Inc., successor in interest<br>To CONSOER TOWNSEND<br>ENVIRODYNE ENGINEERS, INC., a<br>New York corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF AREN FAIRCHILD**

I, Aren Fairchild, pursuant to 28 U.S.C. Sec. 1746 and under penalty of perjury, affirm and declare as follows:

1.      My name is Aren Fairchild.  I reside in Cook County, Illinois and am over 18 years of age.  I have personal knowledge of the facts set forth in this Declaration and, if called upon to do so, I could and competently would testify to the same.

2.      I am an attorney licensed to practice law in the State of Illinois.

3.      I am in-house counsel representing the defendant in this matter, AECOM USA, Inc. ("AECOM")

4.      AECOM is a New York corporation with its principle place of business at 605 Third Ave., New York, New York.

5.      Bruce Bonczyk, one of the attorneys for Plaintiff, the City of Galesburg, called me to advise that he was filing a complaint against AECOM and asked if I would agree to accept service on behalf of AECOM.   I was authorized to and stated that I would accept service on AECOM's behalf.

6.      On June 5, 2015, a Complaint was filed in the Circuit Court of the Ninth Judicial Circuit, Knox County, Illinois, entitled *The City Of Galesburg v. AECOM USA, Inc., successor in interest to Consoer Townsend Envirodyne Engineers, Inc.,* as Case No. 15 L 21 (the "State Action"). The Complaint in the State Action subsequently was mailed to my attention and was received on or about June 8th or 9th 2015. Prior to this time, AECOM had not been served with the Complaint or had other information that it could be removed to this Court.

7.      With regard to the amount in controversy, pre-filing and post-filing communications that I have had with Mr. Bonczyk regarding Plaintiff's claims indicate that Plaintiff is pursuing damages in excess of $250,000.

Further Declarant Sayeth Not.


_____          7/2/15
Aren Fairchild                                         Date